IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-01949-MSK-CBS

FRANK B. DAY; and
DAY MANAGEMENT, INC.,

       Petitioners,

v.

UNITED STATES OF AMERICA,

       Respondent.

**Consolidated with:**

Civil Action No. 10-cv-01950-MSK-CBS

FRANK B. DAY; and
FBD MANAGEMENT, INC.,

       Petitioners,

v.

UNITED STATES OF AMERICA,

       Respondent.

_____

OPINION AND ORDER GRANTING MOTION TO DISMISS
_____

**THIS MATTER** comes before the Court pursuant to Respondent United States of America's Motion to Consolidate Proceedings, Dismiss the Petition to Quash, and Enforce Internal Revenue Service Summons (**#12** in Civil Action No. 10-cv-01949-MSK-CBS)[1], to

---

[1]A similar motion containing identical arguments appears as docket entry #7 in Civil Action No. 10-cv-01950-MSK-CBS. For simplicity, only the filings in Civil Action No. 10-cv-

which Petitioners Frank B. Day, Day Management, Inc., and FBD Management, Inc. responded (#**17**) and the Government replied (#**18**). The portion of the motion seeking consolidation was granted on January 25, 2011 (#**19**) and a hearing on the merits of the remainder of the issues was held by Magistrate Judge Craig B. Shaffer on March 15, 2011 (#**23**).[2] Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

## I. Background

These consolidated cases concern two administrative summons issued by Internal Revenue Agent Paul Shields pursuant to 26 U.S.C. § 7602, one to Bank of the West and one to Vectra Bank. The summons seek production of documents relating to Mr. Day and his associated entities. Thereafter, Mr. Day and the entities filed Motions to Quash each summons, initiating these proceedings. The Government seeks to dismiss the Motions to Quash and thereby obtain enforcement of the summons. As noted by Magistrate Judge Shaffer, the Motion to Quash and the Motion to Dismiss contain essentially mirror image arguments, which ultimately require a determination of whether the summons are valid and enforceable. The Court has jurisdiction pursuant to 28 U.S.C. § 1340.

According to evidence provided by the Government, the IRS is currently inquiring into Mr. Day's tax liability for the tax years 2001-2004. During this time period, Mr. Day claimed to be a *bona fide* resident of the United States Virgin Islands ("USVI"). The IRS has identified an abusive tax scheme whereby U.S. taxpayers claim to be *bona fide* residents of the USVI, receiving income from sources in or connected with the USVI, and file returns only with the

---

01949-MSK-CBS will be used in this order.

[2]The Court treats Magistrate Judge Shaffer's preliminary ruling at the hearing as a recommendation to which Mr. Day objects. As such, the Court reviews the issue *de novo*.

USVI taxing authorities, thereby paying a significantly reduced tax obligation. Internal Revenue Service Notice 2005-45. According to the Declaration of Revenue Agent Paul Shields, attached to the Government's Motion, the IRS is inquiring as to whether Mr. Day was a *bona fide* resident of the USVI during the relevant time period and, if he was not, whether he was obligated to report income for those tax years on a U.S. tax return and in what amounts. Mr. Day did not file a U.S. tax return for tax years 2001, 2002, 2003, and 2004. Mr. Shields states that as part of the inquiry, the IRS seeks information about the entities to determine whether they were used to conceal or transfer funds, which could bear on the question of whether the entities had income from the United States that was distributed to Mr. Day. Mr. Shields avers that he issued the summons on the two banks in furtherance of these inquiries and provides evidence that he complied with the procedural steps required for such issuance.

The summons each seek the following information, limited to the relevant time period: (1) account signature cards from inception of the account; (2) account applications form inception of the account; (3) copies of all deposit tickets and associated deposit items; (4) copies of all credit memos for all credits and/or transfers made into the account; (5) copies of all debit memos for all debit withdrawals and/or transfers made from the account; (6) copies of all records of wire transfers, including all wire transfer requests, wire transfer authorizations, and wire transfer confirmations; and (7) copies of the front and back sides of all cancelled checks written on the account.

## II. Analysis

The Government seeks to enforce the summons pursuant to 26 U.S.C. §§ 7402(b) and 7604(a). These statutes provide:

> If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the

> district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data. 26 U.S.C. § 7402(b).

and

> If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data. 26 U.S.C. § 7604(a).

To enforce an IRS summons, the Government must only make a *prima facie* showing that: (1) the investigation will be conducted pursuant to a legitimate purpose; (2) the inquiry may be relevant to the purpose; (3) the information sought is not already within the Commissioner's possession; and (4) the administrative steps required by the Internal Revenue Code have been followed. *United States v. Silvestain*, 668 F.2d 1161, 1163 (10th Cir. 1982) (quoting *U.S. v. Powell*, 379 U.S. 48 (1964)). Upon this showing, the summoned party must demonstrate, by affidavit, a fatal deficiency in one of the four factors, an absence of good faith, a viable affirmative defense, or abuse of the court's process. *Id.*; *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1444 (10th Cir. 1985); *Anaya v. United States*, 815 F.2d 1373, 1377 (10th Cir. 1987).

The Government has shown that the investigation is conducted for a legitimate purpose, that is, to determine whether Mr. Day has tax liability for the tax years in question and whether he is a *bona fide* resident of the USVI. As part of these determinations, the IRS inquires about whether Mr. Day earned income in the USVI, whether he reported all income earned in U.S. on the returns filed with the USVI tax authorities, whether Mr. Day used his entities to conceal or transfer funds, and whether such entities distributed any U.S. income to Mr. Day. Determining

the liability of any person for internal revenue tax is an authorized purpose for an administrative summons. 26 U.S.C. § 7602(a).

The Government has also shown that the information sought is relevant to the purpose of the inquiry, and that it does not possess the information described in the summons. In addition, the evidence from Mr. Shields establishes that the IRS complied with all administrative steps required by the IRS for issuance of the summons.

The burden therefore shifts to Mr. Day to demonstrate a deficiency in the showing or lack of good faith to rebut the showing. In the Motions to Quash, Mr. Day argues that the summons have been issued for an improper purpose because the statute limiting tax assessment has expired. He further contends that the documents sought by the IRS are not relevant to the determination of his residence or tax liability. These arguments are developed further in his brief responding to the Motion to Dismiss and are addressed in turn.

### A. Statute of Limitation

First, Mr. Day argues that the IRS is acting in bad faith as evidenced by its "position that the statute of limitations does not exist for those United States citizens residing in the USVI, but only for those earning more than $75,000 per year." Resp. (#**17**) at 5. As evidence, Mr. Day points to a 1999 Field Service Advice ("FSA") issued by the IRS, which addresses the statute of limitation for assessment against a taxpayer who files with the USVI taxing authorities. Mr. Day contends that the IRS has issued two subsequent notices, Notice 2007-19 and Notice 2007-31, clarifying the agency's position regarding the statute of limitation. Notice 2007-31 amended and supplanted Notice 2007-19[3], and generally provides that the statute of limitation on assessments

---

[3]Notice 2007-19 provided that an income tax return filed with the USVI would be deemed a U.S. income tax return for the purposes of the statute of limitation provided the person was a U.S. citizen or resident alien, claimed *bona fide* residence of the USVI, filed a USVI Form

will commence upon the filing of an income tax return with the USVI, which is deemed a U.S. tax return (provided the IRS and USVI tax authorities have entered into an agreement for the routine exchange of information). Mr. Day contends that these Notices violate equal protection and due process rights of U.S. citizens who are residents of the USVI and who have an income over $75,000. Mr. Day also asserts that a 2009 report of the IRS Taxpayer Advocate to Congress making similar arguments illustrates the agency's bad faith.

Apparently, counsel for Mr. Day has presented this argument to numerous courts, all of which have rejected it and concluded that substantive challenges to the statute of limitation on assessments does not constitute a defense to a summons. *See, e.g., Twin Palms Resort, LLC, ex rel. Harbour v. United States*, 676 F. Supp. 2d 1350 (S.D. Fla. 2009).[4] This Court declines to depart from the sound reasoning expressed in those cases. 26 U.S.C. § 6501 establishes a three-year statute of limitation for *assessment* following the filing of a U.S. tax return, except when the return is a false or fraudulent. This statutory provision applies only to an assessment, not to the issuance of a summons or to an investigation. "[I]f following enforcement of the summons here the IRS attempts to assess taxes as to which the statute of limitations applies [the taxpayer] will be free to assert the running of the statute as a defense to payment." *United States v. McHenry*, 552 F. Supp. 2d 571, 574 (E.D. Va. 2008). An investigation might reveal that the taxpayer has a tax liability for the years in question which can be timely assessed. For example,

---

1040 with the USVI and had less than $75,000 of gross income. Those with income over $75,000 would be deemed to have filed a U.S. tax return for the purpose of the statute of limitation upon the filing of a U.S. Form 1040. The Notice also set forth additional reporting requirements for such persons. However, these provisions were superseded approximately one month later by Notice 2007-31, which simplified such issues, apparently due to an information sharing arrangement between the two taxing authorities.

[4]*See also* Gangi v. United States, Case No. 10-1138-EFM, 2011 WL 765883 (D. Kan. Feb 25, 2011)

the statute of limitation might not apply if the taxpayer was not actually a *bona fide* resident of the USVI and failed to file a U.S. tax return or filed a false or fraudulent return. *Id*. Thus, merely asserting a defense that an assessment would be untimely does not rebut the Government's showing of a legitimate purpose in seeking information for the purpose of determining a tax liability. This reasoning does not change even though Mr. Day now challenges the statute of limitation for assessment on constitutional grounds.

B. **Relevance**

Mr. Day also argues that the information sought is not relevant to the determination of his residence, which is primarily determined by the taxpayer's subjective intent. For this proposition, he relies on a multi-factor test set forth in *Sochurek v. Comm'r*, 300 F.2d 34, 38 (7th Cir. 1962).[5] He asserts that the banking records will not provide insight into his mental state, nor be relevant to other factors, such as whether his home and family are in the USVI, his involvement in the community, and the nature and duration of his employment. He also contends that the because internet banking has made it easy to bank from any location, the fact of that funds may be transferred from one bank to another has no bearing on the residence of a taxpayer.

Mr. Day's argument is unpersuasive. The summoned information need only have

---

[5]The factors listed in *Sochurek* are:(1) intention of the taxpayer; (2) establishment of his home temporarily in the foreign country for an indefinite period; (3) participation in the activities of his chosen community on social and cultural levels, identification with the daily lives of the people and, in general, assimilation into the foreign environment; (4) physical presence in the foreign country consistent with his employment; (5) nature, extent and reasons for temporary absences from his temporary foreign home; (6) assumption of economic burdens and payment of taxes to the foreign country; (7) status of resident contrasted to that of transient or sojourner; (8) treatment accorded his income tax status by his employer; (9) marital status and residence of his family; (10) nature and duration of his employment; whether his assignment abroad could be promptly accomplished within a definite or specified time; (11) good faith in making his trip abroad; whether for purpose of tax evasion. 300 F.2d at 38.

potential relevance to the investigation; it need not satisfy the relevance standard of the Federal Rules of Evidence. *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984). The records sought need not be dispositive as to Mr. Day's residence or tax liability; they need only bear on where his income comes from, how he disposes of funds of his entities and whether this is consistent with his claimed status and income sources. Bank records showing transfers, credits/deposits and debits/withdrawals provide information about these issues, as do cancelled checks.[6]

Finally, Mr. Day argues that the requested banking records are not relevant to whether his income comes from the U.S. His argument appears to be that the determination that the source of his income cannot be made because the Secretary of the Treasury did not issue regulations during the relevant period to guide the definition of "income effectively connected with the conduct of a trade or business within the [USVI]." 26 U.S.C. § 934(b)(1) (describing the type of income subject to the special USVI tax treatment).

This argument was rejected by the court in *Twin Palms*, 676 F. Supp. 2d at 1358, which noted that the case law upon which the taxpayer relied, *United States v. Auffenberg*, No. 1:07-cr-47, 2008 WL 4115997 (D. Vi. Aug. 26, 2008) was a criminal case, and the reasoning of the *Auffenberg* case does not necessarily apply to a challenge of the validity of a summons. In addition, regulations have since been issued and the relevant taxing authorities have had no difficulty interpreting the definition. *Id*. This analysis is persuasive - simply because a statutory definition requires interpretation does not mean that the definition cannot be applied.

Mr. Day also contends that income from the United States should be treated the same as

---

[6]Mr. Day's arguments regarding relevance have also been rejected by other courts as insufficient to carry the taxpayer's burden to dispute the potential relevance of similar documents sought for the same purpose. *Twin Palms*, *supra*, 676 F. Supp. 2d at 1357.

that from USVI relying on 26 U.S.C. § 932(c)(3), which provides as follows:

> Extent of income tax liability.--In the case of an individual to whom this subsection applies in a taxable year for purposes of so much of this title (other than this section and section 7654) as relates to the taxes imposed by this chapter, the Virgin Islands shall be treated as including the United States.

Section 932 is entitled "Coordination of the United States and Virgin Islands income taxes." Subsection (c) addresses treatment of USVI residents. Mr. Day's reading of this provision seems to be that the phrase "Virgin Islands shall be treated as including the United States" means that income from the United States is equivalent to that from the USVI.

Without deciding this issue, the Court observes that were this so, Section 932 as well as other sections distinguishing between USVI and U.S. income would be entirely unnecessary.[7] Mr. Day's strained interpretation of an isolated provision is insufficient to rebut the Government's *prima facie* showing that it is entitled to enforcement of the summons.[8]

**IT IS THEREFORE ORDERED** that the Motions to Consolidate Proceedings, Dismiss the Petition to Quash, and Enforce Internal Revenue Service Summons (**# 12** in Civil Action No. 10-cv-01949-MSK-CBS and **#7** in Civil Action No. 10-cv-01950-MSK-CBS) are **GRANTED**.

---

[7] Moreover, as noted by the Government, the provision on its face does not apply to section 932, and it is section 932 that sets forth the requirement that the taxpayer identify income from the different income sources. *See* 26 U.S.C. § 932(c)(4) ("In the case of an individual-- (A) who is a bona fide resident of the Virgin Islands during the entire taxable year, (B) who, on his return of income tax to the Virgin Islands, reports income from all sources and identifies the source of each item shown on such return, and (C) who fully pays his tax liability referred to in section 934(a) to the Virgin Islands with respect to such income, for purposes of calculating income tax liability to the United States, gross income shall not include any amount included in gross income on such return, and allocable deductions and credits shall not be taken into account.").

[8] Even if the argument were colorable, this also appears to be an issue that would be more appropriately raised as a defense to assessment, and does not demonstrate that the documents sought by the Government are not relevant to Mr. Day's tax liability or residence.

The Petitions to Quash (**# 1** in Civil Action No. 10-cv-01949-MSK-CBS and **#1** in Civil Action No. 10-cv-01950-MSK-CBS) are **DENIED**.

Dated this 16th day of September, 2011

BY THE COURT:

*Marcia S. Krieger*
_____

Marcia S. Krieger
United States District Judge